### 32913. ATLANTIC COAST LINE RAILROAD CO. *v.* SELLARS.

DECIDED APRIL 7, 1950.

*S. Spencer Bennet,* for plaintiff in error.

*T. Guy Connell, Paul Keenan Jr.,* contra.

SUTTON, C. J.   This was an action for damages in the Superior Court of Brooks County on account of a grade crossing collision between a Jeep truck owned and driven by I. L. Sellars, the plaintiff, and a locomotive operated by the Atlantic Coast Line Railroad Company, the defendant.

The amended petition shows that the following conditions existed and the following events took place on March 14, 1949, the date of the collision:   About 4 miles west of Quitman, Georgia, the main line of the defendant railroad, running in an easterly and westerly direction, intersected with an unpaved public road known as the Thomasville-Grooverville cut-off, running in a northerly and southerly direction, the crossing being known as Emerson's Crossing.   The defendant's railroad tracks were located in the center of its right-of-way, which was 200 feet wide.   The public road was wide enough to permit the passage of traffic in both directions at the same time, except for that part within 40 feet of the defendant's on both sides of the tracks, and this was so narrow that vehicular traffic could proceed in only one direction at a time.   From the point on each side of the track where the narrow road begins there was a steep, curving incline toward the railroad tracks, the incline on the north being steeper and the road at the railroad tracks being 3 1/2 to 4 feet higher than at a point 40 feet to the north and beyond.   Constant vehicular traffic had worn holes in the road near the railroad tracks, so that vehicular traffic could only move up and over the railroad at an extremely low rate of speed.   From the crossing to a point 400 yards east of the crossing the defendant's right of way was covered with trees, bushes, brush, and undergrowth, and from the point on the north where the defendant's right of way intersected the public road, 100 feet north of the center of the tracks, and farther north, there was a heavy growth of timber on both sides of the road, which obstructed the view of any driver of a vehicle proceeding south on the road, until reaching the defendant's right of way, and upon reaching the right of way the view was still obstructed until a point is reached about 75 feet north of the railroad tracks, and from the point to the tracks the bushes, brush, and

undergrowth would interfere with a driver's view to the east, making it difficult to locate a train approaching the crossing from this direction. From the crossing to a point 150 yards from the crossing to the east the defendant's railroad tracks were laid on a gradual incline, and from this point to the east the tracks declined sharply into a bottom. A train traveling in this bottom was completely hidden from the view of a driver of a vehicle on the road on the defendant's right of way until the locomotive reached a point 175 yards from the crossing. About 3 p. m. the plaintiff was driving his Willys Overland Jeep truck, which was practically new and in good condition, and he was approaching the crossing from the north. Rain was steadily falling, and the windows of the truck were up. It was a dark, dreary afternoon, and the road was extremely wet and muddy. As the plaintiff approached the crossing he was driving carefully, and at a speed not in excess of 10 m.p.h. When the plaintiff reached the defendant's right of way and before driving up the incline be brought his truck almost to a complete stop and looked to the east and west, but observed no train approaching. Visibility was bad. At this time one of the defendant's freight trains was approaching the crossing and was in the bottom to the east of the crossing, running at a speed of 35 m.p.h. or more. It could not be seen by the plaintiff and its presence was unknown to him. The plaintiff, believing the way was clear, shifted into low gear and proceeded to drive his truck up the incline and onto the crossing, and in so doing devoted his entire attention to steering the truck up the narrow, rough, and muddy incline, and while his attention was thus devoted to the safe operation of the truck the defendant's train moved out of the bottom and without warning bore down upon the plaintiff as his truck reached the crest of the crossing, and without slackening speed the locomotive struck the left door of the cab of the truck, picking up the plaintiff and truck on the cow-catcher and dragging them approximately 150 yards before being brought to a stop. The defendant, acting through its servants, agents, and employees in charge of the train, failed to blow the whistle, ring the bell, or give any other warning to the plaintiff of the approach of the train, and failed to slacken the speed of the train after the plaintiff's presence on or near the crossing was known.

The details of the plaintiff's personal injuries and the damage to his truck are shown in the petition, and negligence as the proximate cause of these injuries is alleged as follows: "(a) In failing to blow the whistle, ring the bell, or give any other signal or warning that its freight train was approaching said Emerson's Crossing. (b) In failing to keep and maintain a constant and vigilant lookout along the track ahead of said engine and train, and to use due care in approaching said crossing, so that the injury to plaintiff and his property could have been avoided: In this connection plaintiff shows that the failure to blow the whistle as the signal of approach to said crossing, and the failure to keep and maintain a constant and vigilant lookout along the track ahead of said engine, and the failure of defendant, its servants, agents and employees, to exercise due care in approaching said crossing in order to avoid injuring plaintiff and damaging his said property, violated the terms and provisions of § 94-506 of the Code of Georgia of 1933, as amended [Ga. L. 1947, p. 479], which provides: '94-506. Blowposts; signals at crossings; lookouts and exercise of care.—Upon the line of each railway and at a point 400 yards from the center of its intersection at grade with any public road or street used by the public generally in crossing the tracks of said railway, and on each side of said crossing, there shall be erected by the railroad company, or the persons or corporation owning and operating said railway, a blowpost to indicate the existence of such crossing, and the engineer operating the locomotive engine of any railroad train moving over the tracks of said railroad shall be required, when he reaches the said blowpost, as a signal of approach to said crossing, to blow through said whistle two long blasts, one short blast, and one long blast; said blasts to be loud and distinct. In addition thereto, after reaching the blowpost farthest removed from said crossing, and while approaching said crossing, he shall keep and maintain a constant and vigilant lookout along the track ahead of said engine, and shall otherwise exercise due care in approaching said crossing, in order to avoid doing injury to any person or property which may be on said crossing, or upon the line of said railway at any point 50 feet of such crossing.' Plaintiff shows that in violating the provisions of said statute, the de-

fendants, its servants, agents and employees in charge of said freight train at said time and place, were guilty of negligence per se. (c) In failing to keep the right of way at Emerson's Crossing and for a distance of 150 yards or more eastwardly therefrom, free and clear of trees, bushes, weeds and undergrowth, so that plaintiff and other travelers along said public cut-off road could have an unobstructed view of the railroad bed and tracks when they reach the right of way of defendant. (d) In failing to grade said cut-off road throughout the entire width of defendant's right of way to the same width as the road exists before reaching said right of way, and in failing to elevate said road throughout the entire width of said right of way so that it would be on a height even with the railroad tracks, in order that plaintiff and other persons traveling said public road could safely and conveniently cross said railroad track. Plaintiff shows that § 94-503 of the Code of Georgia of 1933 provides: '94-503 . . Upkeep and repair of crossings; bridges, embankments, and excavations.—All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by the several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws;' and that § 94-504, of said Code further provides: '94-504 . . Extent of crossings.—Such crossings shall include the width of land on both sides of the road allowed by charter or appropriated by the company therefor, and as many feet beyond, each way, as is necessary for a traveler to get on and off the crossing safely and conveniently.' Plaintiff thus shows that the failure of the defendant, its servants, agents and employees, to grade and elevate said road so as to permit plaintiff and other travelers to get on and off of said crossing safely and conveniently, was negligence per se. Said acts of negligence were the direct and proximate cause of the collision, and the resulting personal injuries to plaintiff and the damage to his said truck."

The trial judge overruled the defendant's general demurrer to the amended petition, and the defendant excepted.

While it is true that a pleading is to be construed most strongly against the pleader on demurrer, and that if an inference un-

favorable to the right of the pleader may be fairly drawn from the alleged facts, such inference will prevail in determining the rights of the parties, and that no person can recover damages from a railroad company where the same are caused by his own negligence, or where by the exercise of ordinary care he could have avoided the consequences caused by the railroad company's negligence, still it has been held repeatedly by the appellate courts of this State that questions of negligence and proximate cause will not be solved by the court except in plain and indisputable cases, and a plaintiff is not obliged to allege facts showing that he exercised due care for his own safety, or that the injury was not the result of his own negligence, unless it would otherwise affirmatively appear that his injury was caused by his failure to exercise ordinary care, or that it was caused by his own negligence, and a petition is sufficient to withstand a general demurrer where it is alleged that his injuries were caused by the defendant's negligence, facts being alleged from which a jury might find that the defendant was negligent, either in the doing or failure to do something defined as negligence by law, or in the doing or failure to do something which a jury might determine was negligence as a matter of fact, and that this negligence was the proximate cause of the plaintiff's injuries. *Pollard* v. *Hagan*, 60 *Ga. App.* 581, 582 (1) (4 S. E. 2d, 477); *Pollard* v. *Cartwright*, 60 *Ga. App.* 630 (4 S. E. 2d, 693); *Luke* v. *Powell*, 63 *Ga. App.* 795, 802 (12 S. E. 2d, 196); *Central of Georgia Ry. Co.* v. *Barnes*, 46 *Ga. App.* 158 (167 S. E. 217), and citations.

It is the sole contention of the plaintiff in error, the defendant in the court below, in its argument before this court, that the plaintiff was not in the exercise of ordinary care for his own safety at and just prior to the time of the collision, and that he is therefore not entitled to recover. In support of this the defendant argues, among other things, that considering the speed of the truck, the speed of the train, and the visibility of the plaintiff, the train was visible to the plaintiff before he reached the crossing, and necessarily must have been out of the bottom where it would have been hidden from view. Taking the speed of the truck as 10 m.p.h., the defendant shows that it took 6.73 seconds for the truck to reach the crossing from a point 100 feet

away, and taking the speed of the train as 35 m.p.h., the defendant shows that it took the train 10.2 seconds to reach the crossing from a point 175 yards away, where it would have first been visible to the plaintiff. If the alleged speeds of the train and the truck were constant, it is obvious that the head of the train was 350 feet from the crossing when the truck was 100 feet away, and that it was 225 feet from the crossing when the truck was 75 feet from the crossing, and if this be true, the head of the train had actually emerged from the bottom and was in a position where it might have been visible to one in the position of the plaintiff, but this does not necessarily mean that it was visible to the plaintiff or that it was actually seen or should have been seen by the plaintiff, unless all the other conditions shown to exist by the allegations of the petition are completely ignored. It was raining steadily and was a dark and dreary afternoon, and the visibility of the plaintiff was also impaired by the growth on the right of way. Furthermore, the speed of the truck was not constant. The plaintiff shows that he brought the vehicle almost to a complete stop within 100 feet of the crossing and before proceeding up the incline which commenced 40 feet from the crossing, in order to look in both directions for a train. If the speed of the train was constant and the speed of the truck was not constant the ratio of distance from the crossing was changed, and since the speed of the truck is shown to be not more than 10 m.p.h., and was reduced during a part of the time while within 100 feet of the crossing, the time factor for the truck to travel to the crossing from a point 100 feet away must have been in excess of 6.73 seconds. It also appears that while proceeding up the 40 foot incline the plaintiff was unable to look for a train, but had to devote his entire attention to the driving of the vehicle, on account of the condition of the road. Under the allegations of the petition it was shown that the plaintiff's injuries could have been caused by the negligence of the defendant, either by the alleged negligence per se or by the alleged negligence as a matter of fact, and these allegations are quoted above and a repetition here is unnecessary. This court cannot say as a matter of law barring recovery that it was not this negligence, but the plaintiff's own negligence or failure to exercise ordinary care, which was the

sole proximate cause of his injuries, or whether the negligence of both contributed to the injuries. The petition set forth a cause of action and the trial judge properly overruled the general demurrer.

*Judgment affirmed. Felton and Worrill, JJ., concur.*